## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THERMO FINNIGAN LLC,<br><br>     *Plaintiff and<br>     Counter-Defendant,*<br><br>  v.<br><br>APPLERA CORPORATION, MDS INC.,<br>and APPLIED BIOSYSTEMS/MDS SCIEX<br>INSTRUMENTS<br><br>     *Defendants and<br>     Counter-Plaintiffs.* | Civil Action No. 05-110-GMS |

## DEFENDANTS OPENING BRIEF IN SUPPORT OF MOTION TO STAY
## THIS ACTION PENDING REEXAMINATION OF THE PATENT IN SUIT

November 18, 2005

Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6672

*Attorneys for Plaintiffs Applera Corp.,
MDS, Inc., and Applied Biosystems/
MDS Sciex Instruments*

Of Counsel:
Walter E. Hanley, Jr.
James Galbraith
Lewis V. Popovski
Jeffrey S. Ginsberg
Huiya Wu
KENYON & KENYON
One Broadway
New York, NY 10004
(212) 425-7200

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS .............................................1

SUMMARY OF ARGUMENT ..............................................................................2

STATEMENT OF FACTS .....................................................................................3

ARGUMENT...........................................................................................................5

    I. Reexamination Provides An Inexpensive and Expedient Check On Patent
    Validity Before Proceeding With Expensive Infringement Litigation ................5

    II. The Factors Weighed by the Courts All Favor a Stay in this Case ................ 6

        A. A Stay Will Simply Issues and Avoid Duplicative, Unnecessary, and
        Unfocused Discovery on Claims that are Likely to be Eliminated or
        Amended. ...…………………………………………………………..7

        B. A Stay Will Not Prejudice Thermo. ...………………………….10

        C. Stays are Routinely Granted Early in Litigation. ...…………….10

CONCLUSION.......................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alloc, Inc. v. Unilin Décor N.V.,*
   No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917(D. Del. July 11, 2003) ................6, 8

*Bloom Eng'g. Co. v. North Am. Mfg. Co.,*
   129 F.3d 1247 (Fed. Cir. 1997).........................................................................8, 9

*CVI/Beta Ventures, Inc. v. Tura LP,*
   112 F.3d 1146 (Fed. Cir. 1997).........................................................................9

*Digital Magnetic Sys., Inc. v. Ansley,*
   213 U.S.P.Q. 290 (W.D. Okla. 1982) ...............................................................6

*Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co.,*
   3 U.S.P.Q.2d 1889 (N.D. Ill. 1987) .................................................................6

*Ethicon, Inc .v. Quigg,*
   849 F.2d 1422 (Fed. Cir. 1988)........................................................................3

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
   535 U.S. 722 (2002)........................................................................................9

*Gioello Enters. Ltd. v. Mattel, Inc.,*
   No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001) ...........................6, 7

*Hamilton Indus. Inc., v. Midwest Folding Prods. Mfg. Corp.,*
   No. 89-C8696, 1990 WL 37642 (N.D. Ill. Mar. 20, 1990).......................................3, 10

*In Re Laughlin Prods., Inc.,*
   265 F. Supp. 2d 525 (E.D. Pa. 2003) ..............................................................11

*Pegasus Dev. Corp. v. DirecTV, Inc.,*
   No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) ......................6, 7, 11

*Softview Computer Prods. Corp. v. Haworth, Inc.,*
   56 U.S.P.Q.2d (BNA) 1633 (S.D.N.Y. 2000)....................................................7

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.,*
   No. C-94-20775 RPA (EAI), 1995 WL 20470 (N.D. Cal. Jan. 13, 1995).....................6

*United Sweetener USA, Inc. v. Nutrasweet Co.,*
   766 F. Supp. 212 (D. Del. 1991).......................................................................6

*Xerox Corp. v. 3Com Corp.*,
   69 F. Supp. 2d 404 (W.D.N.Y. 1999) ...........................................................................11


**STATUTES**

35 U.S.C. § 302 (2005) ...........................................................................................4

35 U.S.C. § 252 (2005) ...........................................................................................9

35 U.S.C. § 307 (2005) ...........................................................................................9


**RULES**

37 C.F.R. § 1.176 (2005) .......................................................................................10

37 C.F.R. § 1.565(d) (2005) ....................................................................................4

## INTRODUCTION

The U.S. Patent and Trademark Office (PTO) have recently determined that multiple and substantial issues of patentability exist as to each asserted claim of the patent-in-suit and ordered the patent be reexamined.  In light of the PTO's conclusion, Defendants and Counter-Plaintiffs Applera Corporation, MDS Inc., and Applied Biosystems/MDS Sciex Instruments (collectively, "AB/Sciex") move for an order staying this action pending the outcome of the reexamination.

## NATURE AND STAGE OF THE PROCEEDINGS

On September 7, 2004, AB/Sciex brought a patent infringement action against Thermo Electron Corporation; the case was assigned Civil Action No. 04-1230-GMS. On February 23, 2005, Thermo Finnigan LLC ("Thermo") filed this countersuit alleging infringement of U.S. Patent No. 6,528,784 ("the '784 patent").  (D.I. 1.)  In its Complaint, Thermo asserts that claims 1 and 4 of the '784 patent are infringed by the API 5000 mass spectrometer manufactured and sold by AB/Sciex.  AB/Sciex denies infringement of the '784 patent and challenges its validity.  (D.I. 9.)

During a telephone conference on April 27, 2005, the Court consolidated this case with the September 7, 2004 action.  On the same date, the Court entered an Order setting a hearing on claim construction issues for January 9, 2006, and for opening and answering briefs on claim construction issues to be filed on November 18 and December 12, 2005, respectively.  Fact discovery is ongoing and is scheduled to close on March 17, 2006.  The case is scheduled for a ten-day jury trial beginning on December 4, 2006.

At present, the parties have exchanged and responded to a second round of written discovery.  No depositions have been taken.

On March 4, 2005, two weeks after it filed this lawsuit and without notice to AB/Sciex or the Court, Thermo filed in the PTO a Reissue Application for the patent in suit. Shortly after it became aware of the reissue proceeding, on July 29, 2005, defendant Applera filed a Protest in the PTO setting forth the reasons why the claims of the '784 patent are invalid and why the additional, broader claims sought by Thermo are unpatentable. Applera subsequently filed a Request for Reexamination of the '784 patent on September 16, 2005 based on the same prior art addressed in its Protest.

On November 4, 2005, the PTO granted Applera's Request for Reexamination. After a careful and detailed review, the PTO reasoned that admissions made by the patentee during the prosecution of the original patent, the disclosures of the new prior art references, as well as the known references all combine to raise numerous and substantial issues of patentability for each claim of the '784 patent. The PTO based its determination on grounds of both anticipation and obviousness. The PTO went beyond the grounds stated in the Request for Reexamination, finding substantial new questions of patentability on grounds not raised by Applera.

## SUMMARY OF ARGUMENT

In view of the thoroughness of the PTO's analysis in granting the Request for Reexamination, which raises a serious question as to whether any claims will emerge unchanged, the Court should stay this case to avoid a waste of the Court's and the parties' resources and to realize the efficiencies that would be created. For example, if the case is stayed:

- the Court will not need to revisit construction of the claims of the '784 patent to take into consideration the new intrinsic record created in the reexamination;

- if the patent is declared invalid, the suit will in all likelihood be dismissed;

- the outcome of the reexamination may encourage a settlement without further involvement of the court;

- the record of the reexamination may focus the trial, thereby reducing the issues and the length of the trial and pre-trial conferences; and

- the cost will likely be reduced both for the Court and for the parties.

None of these savings will be recognized if the case is allowed to proceed. Indeed, allowing the case to proceed in parallel with the PTO proceedings, would not only forego the above efficiencies, but would also create a substantial risk of inconsistent rulings or the issuance of an advisory opinion—an opinion on claims that no longer exist. Because the PTO cannot stay the reexamination once a request has been granted (*see Hamilton Indus., Inc. v. Midwest Folding Prods. Mfg. Corp.*, No. 89-C8696, 1990 WL 37642, \*2 (N.D. Ill. Mar. 20, 1990) (citing *Ethicon, Inc .v. Quigg,* 849 F.2d 1422 (Fed. Cir. 1988)) (attached hereto as Exhibit A), only the Court can prevent the duplication and unnecessary expenditure of resources by staying this case.

A stay would not prejudice Thermo. Indeed, Thermo should not be heard to complain that it will be prejudiced by a stay as Thermo itself first instituted the parallel proceedings in the PTO. Nor is AB/Sciex attempting to gain any tactical advantage. AB/Sciex filed its Protest and the Request for Reexamination only after Thermo began proceedings in the PTO and very early in the discovery process.

## STATEMENT OF FACTS

On March 4, 2005, less than two weeks after the present suit was filed, Thermo instituted a reissue proceeding for the patent in suit. On July 29, 2005, shortly after

AB/Sciex learned of the reissue proceeding, Applera filed a Protest to Thermo's reissue application asserting that all claims of the '784 patent are unpatentable over the prior art. On September 16, 2005, Applera petitioned the PTO pursuant to 35 U.S.C. § 302 requesting a reexamination of the validity of the patent in suit in light of new prior art.

On November 4, 2005, the PTO determined that a "substantial new question" exists concerning the validity of the '784 patent and granted Applera's Request for Reexamination, ("the PTO's Decision").[1]  In doing so, the PTO found numerous substantial new questions of patentability, issuing a 10-page detailed analysis that provides multiple grounds of invalidity for each claim. *See* United States Patent and Trademark Office Ex Parte Reexamination Communication, Nov. 4, 2005, at 2-9 (attached hereto as Exhibit B).   The PTO based its decision on new prior art submitted by Applera and on admissions made by the patentee during the original prosecution of the '784 patent.  The PTO also based its decision on grounds not raised by Applera, even questioning the rationale for the allowance of the claims in the first instance:

> "[Bruins] suggests that the design of the WHITEHOUSE spectrometer inherently takes into account the breaking of cluster ions because WHITEHOUSE uses an API in source. . . . given the examiner's reasons for allowance of the [patent in suit], and the fact the WHITEHOUSE teaches an API mass spectrometer admitted by Patent Owner to disclose all of the features except for the breaking of cluster ions without fragmentation in the ion guides . . . a substantial new question of patentability [is raised]." Exh. B at 4.

---

[1]      When faced with both a reissue application and a reexamination proceeding, the PTO is authorized to consolidate two proceedings. 37 C.F.R. § 1.565(d).  AB/Sciex fully expects the reissue and reexamination proceedings to be consolidated.

The PTO then continued its analysis, setting forth numerous additional, independent grounds on which it based its conclusion that substantial questions of patentability exist:

- "substantial new question of patentability exists as to claims 1, 2, and 4-9 over the combined teaching of LAZAR with SMITH." Id.

- "the combination of HAGER with LAZAR raises a substantial new question of patentability of claims 1, 2, and 4-8." Id. at 5.

- "Accordingly, the combination of BUCHANAN with SMITH raises a substantial new question of patentability as to claims 1, 2, and 4-9 of the '784 patent." Id. at 5.

- "Accordingly, the combination of BUCHANAN with THOMSON raises a substantial new question of patentability as to claims 1, 2, and 4-9 of the '784 patent." Id.

- "*each* of KAMBARA . . . CHOWDHURY . . . KATO . . . KLIENTOP . . . THOMSON . . . and TOMANY . . . raises a substantial new question of patentability as to claim 3 of the '784 patent." Id. at 6 (also discussing substantial questions of patentability of claim 3 additionally rose by SMITH and HAGER) (emphasis added).

The PTO's Decision is thorough, detailed and soundly reasoned. AB/Sciex submits that given this detailed nature and the sheer number of independent basis for invalidity, it is highly unlikely that the asserted claims will emerge from reexamination unchanged, if at all.

## ARGUMENT

### I.    Reexamination Provides An Inexpensive and Expedient Check On Patent Validity Before Proceeding With Expensive Infringement Litigation

"Congress enacted the [PTO] reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should

be deferred to by the courts." *Digital Magnetic Sys., Inc. v. Ansley*, 213 U.S.P.Q. 290, 290 (W.D. Okla. 1982). Numerous courts have recognized that "in passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion." *Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987).

The grant of a stay pending a reexamination proceeding is firmly within the discretion of the Court. *See, e.g., Alloc, Inc. v. Unilin Décor N.V.*, No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, *4 (D. Del. July 11, 2003) (attached hereto as Exhibit C).

## II.     The Factors Weighed by the Courts All Favor a Stay in this Case

In ruling on a motion for stay, courts generally consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Alloc,* 2003 U.S. Dist. LEXIS 11917, at *5; *see, e.g., Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020-GMS, 2003 WL 21105073, *1 (D. Del. May 14, 2003) (attached hereto as Exhibit D); *Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, *1 (D. Del. Jan. 29, 2001) (citations omitted) (attached hereto as Exhibit E); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. C-94-20775 RPA (EAI), 1995 WL 20470, *1 (N.D. Cal. Jan. 13, 1995) (attached hereto as Exhibit F); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).

Each of these three factors is discussed below and each of these factors weighs heavily in favor of staying this case.

-6-

A.     **A Stay Will Simplify Issues and Avoid Duplicative, Unnecessary, and Unfocused Discovery on Claims that are Likely to be Eliminated or Amended.**

Courts have relied heavily on whether a stay will simplify the issues in question or shorten the trial of the case in determining the propriety of granting the stay. *See, e.g., Pegasus*, 2003 WL 21105073, at *2 (noting that the chief justification for a stay in light of reexamination is judicial economy). Here, this factor strongly favors staying this action.

As this Court has noted in *Gioello*:

> [I]f the parties continue to litigate the validity of the claims in this Court, and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court will have wasted time and the parties will have spend additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims.

2001 WL 125340, at *2 (citing *Softview Computer Prods. Corp. v. Haworth, Inc.*, 56 U.S.P.Q.2d (BNA) 1633, 1636 (S.D.N.Y. 2000)).

The PTO's reexamination of the claims being asserted in this case will impact many facets of the present litigation, none more so than the process of claim construction on which the Court is set to engage with regard to the '784 patent. In the reexamination proceeding, a new element of the intrinsic record will be created that may have a significant bearing on the proper construction of the asserted claims. Other aspects of the case will also be affected by the PTO's decisions and the back and forth nature of the reexamination process, including discovery and the issues of infringement, validity, and damages. *See Gioello,* 2001 WL 125340, at *2. It is therefore beyond dispute that a stay at this early point in the litigation will conserve the resources of the Court and the parties,

and will serve the interests of justice. *See Alloc,* 2003 U.S. Dist. LEXIS 11917, at *7 ("it is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims . . . . To this end, the reexamination . . . will greatly serve the purpose of defining the issues . . .").

There are three possible outcomes of the pending reexamination; namely, the PTO may cancel, amend, or confirm the claims of the '784 patent. If the PTO declares each of the asserted claims to be invalid, there will be no further proceedings in this lawsuit. Without a valid patent, Thermo would have no cause of action against AB/Sciex. In this situation, if no stay is granted, all the time and resources expended by the parties and the Court will have been wasted.

Second, if the claims are amended, the issues and scope of discovery will be changed. Here, the fact that the PTO has asserted numerous, never before considered references against the patentability of each asserted claim increases the likelihood that some claims will at least be amended.

Amendments to the claims will affect all aspects of discovery. A change in claim scope can add or subtract products from the case, affecting damages, the scope of document review and production, the focus of interrogatories, and the scope of permissible deposition questioning. Changes in claim scope can also determine whether certain claimed mass spectrometer features are in or out of the case, which would have a similar effect on discovery and trial preparation issues. As noted above, any change to the claims will also impact claim construction issues. Moreover, any change in the scope of the claims due to amendment renders irrelevant any allegedly infringing acts that occurred prior to the issuance of the reexamination certificate. *See Bloom Eng'g. Co. v.*

*North Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997) (substantive change to claims in reexamination relieves those who may have infringed the original claims from liability for acts occurring prior to the conclusion of the reexamination); *see also* 35 U.S.C. §§ 252, 307. Thus, if no stay is granted prior to an amendment of the claims, much (and possibly all) of the costs and the parties resources consumed in discovery and trial preparation before the amendment, again, will have been wasted.

Third, even in the unlikely event that the asserted claims are confirmed, the arguments that Thermo will have to make to distinguish the claims from the new prior art will greatly impact this case. For example, it is likely that Thermo will be called to explain how the patent is different from the numerous references the PTO has cited. Thermo's arguments will go to the very core of Thermo's purported invention and will necessarily impact every facet of this case. If that is allowed to happen before the PTO, during subsequent litigation, the issues would be focused and some may even be dropped. *See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002) ("When . . . the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent."). As is the case with the prosecution history of an issued patent, statements made during the reexamination proceedings may also narrow disputes concerning the meaning of the claims. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997) ("through statements made during prosecution or reexamination an applicant for a patent or patent owner . . . may commit to a particular meaning for a patent term, which meaning is then binding in litigation").

A confirmation of all claims is the least likely result here as the PTO has set forth strong reasons casting great doubt that any claim will survive reexamination.  Indeed, the large number of prior art references, including references not previously considered by the PTO, that are being asserted against the claims makes a confirmation of all claims highly unlikely.  On balance, it makes far more sense for the Court to grant a stay than to deny it.

**B.    A Stay Will Not Prejudice Thermo.**

Thermo will not be prejudiced by a stay of this action.  Thermo elected to file this action despite the fact that Thermo apparently *planned* to file a reissue application immediately thereafter.  The filing of the reissue application reopens the prosecution history of the patent at issue and each of the claims is subject to any and all rejections the examiner deems appropriate.  37 C.F.R. § 1.176.  Accordingly, Thermo cannot now complain about the consequence of its own actions.  Nor can Thermo complain of surprise or tactical maneuvering by AB/Sciex.  AB/Sciex filed its Protest and the Request for Reexamination early in the case and only after Thermo sent the '784 patent back into the PTO.   AB/Sciex is not attempting to use the reexamination procedure to delay the adjudication of the claims.  Rather, AB/Sciex looks to make sure that the claims get adjudicated only once.  As the PTO must see the reexamination to its ultimate conclusion (*Hamilton Indus.,* 1990 WL 37642, at *2), only the Court can prevent unnecessary duplication and wasting of resources and time.

**C.    Stays are Routinely Granted Early in Litigation.**

With respect to the timing of this Motion, AB/Sciex is moving for a stay immediately after the PTO has granted the reexamination request by concluding that numerous, substantial new questions of patentability exist.  This is at a time when no

depositions have been conducted and no substantive motions have been filed. Indeed, the

Court has not even had to engage in the claim construction process. It is in these very

instances, where a stay is sought early in a case, that the greatest savings of resources can

be attained. *See, e.g., Pegasus*, 2003 WL 21105073, at *2 (granting motion to stay

pending reexamination where a stay "may result in a simplification or reduction of issues

for the court's consideration, or it may dispense with the litigation entirely"); *In Re

Laughlin Prods., Inc.*, 265 F. Supp. 2d 525, 532 (E.D. Pa. 2003) (granting motion to stay

because case was in its infancy); *cf. Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404,

407-08 (W.D.N.Y. 1999) (denying motion to stay pending reexamination where the

parties had engaged in substantial discovery and dispositive motions, pretrial conference

was imminent, and there was evidence that "movant's request for a stay has at least some

dilatory tactical motive behind it").

In sum, AB/Sciex's motion is supported by all three of the factors generally

considered in deciding motions to stay pending reexamination: (1) a stay will not

prejudice plaintiff (the non-moving party); (2) a stay will simplify the issues, conserve

the parties' and the Court's resources and allow the case to move forward more

efficiently and expeditiously once the reexamination process is completed, and (3)

discovery has not been completed. *See Pegasus*, 2003 WL 21105073, at *1 (citations

omitted).

## CONCLUSION

For the foregoing reasons, the proceedings in this case should be stayed pending

the outcome of the reexamination proceeding on the same patent already underway in the

PTO.

Respectfully submitted,

Dated: November 18, 2005                    YOUNG CONAWAY STARGATT &
                                            TAYLOR, LLP


                                            _Karen E. Keller_

                                            Josy W. Ingersoll (#1088)
                                            Karen E. Keller (#4489)
                                            The Brandywine Building
                                            1000 West Street, 17th Floor
                                            P.O. Box 391
                                            Wilmington, DE 19899-0391
                                            (302) 571-6672

                                            *Attorneys for Plaintiffs Applera Corp., MDS, Inc.,*
                                            *and Applied Biosystems/MDS Sciex Instruments*

Of Counsel:

Walter E. Hanley, Jr.
James Galbraith
Lewis V. Popovski
Jeffrey S. Ginsberg
Mark A. Chapman
Huiya Wu
KENYON & KENYON
One Broadway
New York, NY 10004
(212) 425-7200

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire hereby certify that on November 18, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Frederick L. Cottrell, III, Esquire
> Kelly E. Farnan, Esquire
> RICHARDS, LAYTON & FINGER
> One Rodney Square
> Wilmington, Delaware 19801

I further certify that on November 18, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY ELECTRONIC MAIL

> Wayne L. Stoner, Esquire
> Wilmer Cutler Pickering Hale and Dorr LLP
> 60 State Street
> Boston, MA 02109
> wayne.stoner@wilmerhale.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP


Karen E. Keller  (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Plaintiffs Applera Corporation,
  MDS Inc., and Applied Biosystems/MDS Sciex
  Instruments