## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THERMO FINNIGAN LLC,<br><br>   *Plaintiff and*<br>   *Counter-Defendant*,<br><br>  v.<br><br>APPLERA CORPORATION, MDS INC.,<br>and APPLIED BIOSYSTEMS/MDS SCIEX<br>INSTRUMENTS<br><br>   *Defendants and*<br>   *Counter-Plaintiffs*. | Civil Action No. 05-110-GMS |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO STAY
## THIS ACTION PENDING REEXAMINATION OF THE PATENT IN SUIT

December 22, 2005

Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

*Attorneys for Defendants and Counter-
Plaintiffs Applera Corp., MDS, Inc., and
Applied Biosystems/MDS Sciex Instruments*

Of Counsel:
Walter E. Hanley, Jr.
James Galbraith
Lewis V. Popovski
Jeffrey S. Ginsberg
Huiya Wu
KENYON & KENYON
One Broadway
New York, NY 10004
(212) 425-7200

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................1

ARGUMENT ......................................................................................3

    I.      AB/Sciex Has Not Filed This Motion To Gain Any
           Tactical Advantage ..................................................................3

    II.     Granting AB/Sciex's Motion To Stay Is The Most
           Efficient Course Of Action .......................................................9

    III.    The Reexamination And AB/Sciex's Motion To Stay
           Are Consequences Of Substantial Questions Of Patentability
           Of The '784 Patent Claims As Determined By The PTO ...................14

    IV.    Granting AB/Sciex's Motion To Stay Does Not Unduly
           Prejudice Thermo ..................................................................15

CONCLUSION ..................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agar Corp. Inc. v. Multi-Fluid, Inc.,*
983 F. Supp. 1126 (S.D. Tex. 1997) ....................................................13

*Alloc, Inc. v. Unilin Décor N.V.,*
No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003) ..........10

*Bloom Eng'g Co. v. N. Am. Mfg. Co.,*
129 F.3d 1247 (Fed. Cir. 1997) ........................................................11

*Centillion Data Sys., LLC. v. Convergys Corp.,*
No. 1:04-CV-0073-LJM-WTL, 2005 WL 2045786 (S.D. Ind. Aug. 24, 2005) .8, 9

*Cognex Corp. v. Nat'l. Instruments Corp.,*
No. C.A. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001) .................8

*Freeman v. Minn. Mining & Mfg. Co.,*
661 F. Supp. 886 (D. Del. 1987) ........................................................9

*Gioello Enters. Ltd. v. Mattel, Inc.,*
C.A. No. 99-375-GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001) .................10

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness Inc.,*
48 U.S.P.Q.2d (BNA) 1058 (C.D. Cal. 1998) ......................................14

*In re Graff,*
111 F.3d 874 (Fed. Cir. 1997) ..........................................................5

*Output Tech. Corp. v. Dataproducts Corp.,*
22 U.S.P.Q.2d (BNA) 1072 (W.D. Wash. 1991) ....................................14

*Remington Arms Co. v. Modern Muzzleloading, Inc.,*
No. 2:97CV00660, 1998 WL 1037920 (M.D. N.C. Dec. 17, 1998) ...........8, 16

*Soverain Software, LLC v. Amazon.com, Inc.,*
356 F. Supp. 2d 660 (E.D. Tex. 2005) ...............................................13

*Xerox Corp. v. 3Com Corp.,*
69 F. Supp. 2d 404 (W.D.N.Y. 1999) .................................................8

**STATUTES**

35 U.S.C. § 252 (2005) ………………………………………………………11

35 U.S.C. § 303 (2005) ………………………………………………………7

35 U.S.C. § 304 (2005) ………………………………………………………9

35 U.S.C. § 307 (2005) ………………………………………………………11

**RULES**

37 C.F.R. § 1.176 (2005) ……………………………………………………5

37 C.F.R. § 1.291 (2005) …………………………………………………6, 15, 16

**INTRODUCTION**

Defendants and Counter-Plaintiffs Applera Corporation, MDS Inc., and Applied Biosystems/MDS Sciex Instruments (collectively, "AB/Sciex") have moved for an order staying this action pending the outcome of the ongoing reexamination proceeding in the United States Patent and Trademark Office ("PTO") for U.S. Patent No. 6,528,784 ("the '784 patent"). Plaintiff Thermo Finnigan LLC ("Thermo") opposes the stay, arguing, among other things, that AB/Sciex has sought the stay to gain an unfair tactical advantage, that AB/Sciex's Request for Reexamination and this motion for a stay are unrelated to Thermo's prior application to reissue the '784 patent, that a stay would produce inefficiencies, that the PTO's grant of the request for reexamination in this case is "unremarkable," and that Thermo will be prejudiced by a stay. Thermo is wrong on all counts.

First, AB/Sciex's did not file its Request for Reexamination and this motion to gain a tactical advantage in this case. The Request and this motion are a direct consequence of Thermo's filing its reissue application. AB/Sciex submitted its Request in response to *Thermo's* tactic of seeking, through reissue, an *ex parte* determination by the PTO of whether the claims of the '784 patent are patentable over prior art relied on by AB/Sciex, rather than have this Court or the jury rule on that issue in the first instance. AB/Sciex filed this motion within two weeks after the PTO issued a ruling casting doubt on the patentability of Thermo's patent claims. AB/Sciex also sought to prompt the PTO to rule at the earliest possible time after it learned that Thermo intended to place prior art identified by AB/Sciex in discovery before the PTO in the reissue proceeding. Thermo's argument that AB/Sciex seeks to avoid exposure of inconsistencies between its positions

on claim terms in the '736 patent as compared to the '784 patent is specious. If AB/Sciex has made any arguments in connection with the '784 patent that Thermo thinks are relevant to the constructions of the disputed terms in the '736 patent, Thermo is free to point those out in arguing its positions on the '736 patent.

Second, a stay, if issued prior to any ruling by the Court on the construction of the claims of the '784 patent, will avoid requests to the Court for amended *Markman* rulings in order to account for the ongoing development of the intrinsic record in the reexamination proceeding, which may include amendments to the claims asserted here. Absent a stay, the benefit of the Court's practice of having claim construction disputes resolved at an early stage, and particularly before expert reports and requests to file summary judgment motions are due, will be lost. Thermo's argument that all efficiencies in consolidating discovery in the two cases will be lost if a stay is granted is exaggerated. Any discovery in the 04-1230 action that is relevant to the 05-110 action can be used in the latter action when the stay ends, assuming that there is anything left to the 05-110 action. There will be no need to redo discovery that is already done. Moreover, at no time prior to or during the scheduling conference with the Court on April 27, 2005 did Thermo inform AB/Sciex or the Court that it had filed an application to reissue the '784 patent. AB/Sciex only learned of the application when it reviewed Thermo's initial disclosures served on May 6, 2005, in which Thermo obliquely disclosed the existence of the reissue application. Had AB/Sciex known of the reissue application prior to the scheduling conference, it would have alerted the Court at that time that, depending on what happened in the PTO, it might seek a stay.

Third, Thermo dismisses the PTO's grant of reexamination of the '784 patent on the basis that reexamination is frequently granted. However, the sheer number of new questions of patentability the PTO found in this case, the detail with which the PTO presented its findings, and the fact that the first new question listed by the PTO was raised *sua sponte* distinguish this reexamination grant from the norm. By comparison, the PTO found only a single new question of patentability in granting MDS's request for reexamination of the '736 patent in 1997.

Finally, Thermo will not be unduly prejudiced by a stay. By seeking reissue, and placing prior art disclosed by AB/Sciex before the PTO, Thermo chose to place the issue of the patentability in the PTO, where AB/Sciex has a limited opportunity to participate. Thermo is in no position to complain about being relegated to that chosen forum until the reissue/reexamination is completed. Moreover, there is no evidence to indicate that monetary damages would not provide full and complete relief in the unlikely event that the '784 patent survives reexamination intact and Thermo prevails in this suit.

## ARGUMENT

### I. AB/Sciex Has Not Filed This Motion To Gain Any Tactical Advantage

Thermo accuses AB/Sciex of filing its Request for Reexamination and this motion for a stay to gain a tactical advantage in this case. Thermo specifically accuses AB/Sciex of seeking a stay to avoid a consolidated *Markman* hearing at which Thermo will expose supposed inconsistencies in AB/Sciex's positions on claim construction as between its '736 patent and Thermo's '784 patent.[1] These accusations are false.

---

[1]    AB/Sciex has not taken any "inconsistent approaches to claim construction." Thermo Br. 3. Thermo points to a single example of AB/Sciex's alleged inconsistency. Thermo alleges that AB/Sciex seeks to narrowly construe the term "mass analyzer" in the '784 patent by improperly importing a limitation from the specification, but argues against importing a limitation from the specification (as

First, AB/Sciex submitted its Request in response to *Thermo's* tactic of seeking, through reissue, to have the issue of whether the claims of the '784 patent are patentable over prior art relied on by AB/Sciex ruled on *ex parte* by the PTO rather than have this Court or the jury rule on that issue in the first instance. The "chronology of events" (Thermo Br. 3), set forth below, demonstrates that fact:

| | |
|---|---|
| February 23, 2005: | Thermo files the Complaint. |
| March 4, 2005: | Thermo files its reissue application. |
| April 13, 2005: | AB/Sciex files its Answer. |
| April 27, 2005: | Scheduling conference; the Court agrees to the parties' recommendation to consolidate the 04-1230 and 05-110 actions. |
| May 6, 2005: | First notice to AB/Sciex that the application for reissue had been filed, presented in Thermo's initial disclosures. |
| July 5, 2005: | Thermo notifies AB/Sciex that it intends to provide prior art and other information disclosed by AB/Sciex in discovery to the PTO in the reissue proceeding. |
| July 29, 2005: | AB/Sciex files a Protest in the PTO against the Thermo's reissue application. |
| September 16, 2005: | Because of inaction by the PTO in the reissue application, AB/Sciex files the Request for Reexamination. |
| November 4, 2005: | PTO grants the Request for Reexamination. |
| November 18, 2005: | AB/Sciex files the motion for a stay. |

---

Thermo proposes) for the term "separated by a wall" in the '736 patent. *Id.* at 3, n.1. Thermo's purported inconsistency has been manufactured entirely for its brief. AB/Sciex has proposed a construction for the term "mass analyzer," a technical term, that is consistent with both the usage in the art and the specification of the '784 patent. For the term "separated by a wall," AB/Sciex has proposed a construction that is the same as that adopted by the Court in the Micromass litigation and affirmed by the Federal Circuit.

Thermo filed for reissue on March 4, 2005, less than two weeks after filing this suit against AB/Sciex. *See* Reissue Patent Application of U.S. Patent No. 6,528,784, (attached hereto as Exhibit A). Thermo explains the timing of its reissue application, stating that it did so because March 4, 2005 was the statutory deadline for seeking reissue to broaden claims. However, that explanation merely underscores the fact that Thermo could have applied for reissue anytime between March 4, 2003 when the '784 patent issued and March 4, 2005, and certainly could have done so long before it sued AB/Sciex. A reissue proceeding is not just "for correcting a mistake in a patent," and it does not differ from a reexamination in that the latter, but not the former, "allows the PTO to consider additional prior art," as Thermo argues. Thermo Br. 8. By filing a reissue application, the patentee puts the patentability of all claims in issue. *See* 37 C.F.R. § 1.176 ("An original claim, if re-presented in the reissue application, is subject to reexamination, and the entire application will be examined in the same manner as original applications . . . ."); *see also In re Graff*, 111 F.3d 874, 875 (Fed. Cir. 1997) (noting that the examiner conducted a new prior art search in accordance with PTO practice for all reissue applications, even those based on draftsman's error, and subsequently rejected all of the claims on the ground of obviousness based on a new reference). Thermo stood to benefit tactically by seeking reissue *after* suing AB/Sciex because it could then take any prior art disclosed by AB/Sciex during the litigation and dump it into the reissue proceeding, where, unlike here, it could make arguments about patentability without any substantial participation by AB/Sciex.

Two months after Thermo filed the reissue application, on May 6, 2005, Thermo disclosed its existence to AB/Sciex in Thermo's initial disclosures. The

disclosure could not have been more oblique. Thermo included in its identification of

individuals who may have discoverable information the following:

> William J. Speranza
> Wiggin and dana
> 400 Atlantic Street
> P.O. Box 110325
> Stamford, CT 06911-0325
> (203) 363-7637
>
> -- Prosecuting attorney for the '784 patent during re-issue proceedings.

*See* Thermo Electron Corporation's and Thermo Finnigan LLC's Initial Disclosures

Pursuant to Fed. R. Civ. P. 26(a), May 6, 2005, at 5, (attached hereto as Exhibit B).

Thermo's tactic became evident when, on July 5, 2005, Thermo's counsel notified

AB/Sciex's counsel that it intended to submit to the PTO "prior art and other information

allegedly material to the patentability of the Tang patent" disclosed by AB/Sciex in

discovery. *See* Letter from Stephen M. Muller to Jeffrey S. Ginsberg, July 5, 2005,

(attached hereto as Exhibit C). In response to Thermo's tactic, AB/Sciex promptly

submitted a Protest under 37 C.F.R. § 1.291(a) on July 29, 2005. *See* Applera

Corporation's Protest of Reissue Application Serial No. 11/073394 Under 37 C.F.R. §

1.291(a), (attached hereto as Exhibit D). A protest was the only vehicle available to

AB/Sciex under the PTO's rules for making arguments directly to the PTO in the reissue

proceeding regarding the unpatentability of Thermo's claims over prior art. *See* 37

C.F.R. § 1.291(a) (attached hereto as Exhibit E).[2] AB/Sciex fully expected the PTO to

---

[2]      The PTO's rules exclude the protestor from participation after submission of the protest, except
that new protest may be filed if new issues are raised that could not have been presented earlier:
> The limited involvement of the member of the public filing a protest pursuant to this
> section ends with the filing of the protest, and no further submission on behalf of the
> protestor will be considered, unless the submission is made pursuant to paragraph (c)(5).

37 C.F.R. § 1.291(d) (Exhibit E at 162-63).

rule that the claims of the '784 patent were unpatentable, and intended to seek a stay as soon as the first such ruling was issued.

As of mid-September 2005, however, the PTO had not yet taken up the merits of Thermo's reissue application, and had not even assigned the application to an examiner. In fact, as of the filing of this brief, the PTO has not yet taken any action on the merits of Thermo's reissue application. In order to prompt the PTO to rule on patentability sooner rather than at a later stage in this litigation, AB/Sciex submitted its Request for Reexamination on September 16, 2005. *See* Request for *Ex Parte* Reexamination of U.S. Patent No. 6,528,784 Pursuant to 37 C.F.R. § 1.510, (attached hereto as Exhibit F). By statute, the PTO is required to act on a request for reexamination within three months after it is filed. 35 U.S.C. § 303(a). Here, the PTO acted within less than two months, granting the Request for Reexamination on November 4, 2005. (Exhibit B to AB/Sciex's Opening Brief). AB/Sciex filed this motion two weeks later.

Second, AB/Sciex has already provided the Court with its proposed claim constructions and supporting arguments in its claim construction briefs. Thus, Thermo's argument that AB/Sciex filed the motion to stay the present case in order to gain a tactical advantage to avoid having the Court confront any "inconsistencies" is groundless. Whatever AB/Sciex has done is plain for all to see and AB/Sciex is confident that the Court is capable of discerning inconsistent approaches to claim construction regardless of whether the claim construction hearing in the 04-1230 action and the 05-110 action occur simultaneously. If Thermo thinks AB/Sciex has made any arguments in connection with the '784 patent that are relevant to the constructions of the disputed terms in the '736 patent, Thermo is free to point those out in arguing its positions on the '736 patent.

-7-

In addition, the cases cited by Thermo for denying a stay due to unfair tactical advantage provide no support for Thermo's arguments because they are distinguishable from the facts in this case.  Here, the request for reexamination was filed in the very early stages of the case, no *Markman* ruling has been issued, no depositions have been taken, and no substantive motions have been filed.  Also, AB/Sciex has not previously attempted to delay the case, justifiably or otherwise.  Moreover, AB/Sciex did not learn of the relevant prior art long before submitting its protest to Thermo's reissue application of the '784 patent.  *See Cognex Corp. v. Nat'l Instruments Corp.*, C.A. 00-442-JJF, 2001 WL 34368283, at *2-3, n.2 (D. Del. June 29, 2001) (denying plaintiff's motion to stay because discovery was almost over, trial was only four months away, and noting that some of the documents plaintiff presented to the PTO were in plaintiff's possession as early as 1990, nearly ten years before the inception of the litigation) (attached hereto as Exhibit G); *Xerox Corp. vs. 3Com Corp.*, 69 F. Supp. 2d 404, 406-08 (W.D.N.Y. 1999) (denying defendants' motion to stay because extensive discovery had taken place, dispositive motions were filed, and defendant waited 7 months after it knew of prior art and only "after an adverse decision in their motion for summary judgment to petition PTO for reexamination"); *Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 2:97CV00660, 1998 WL 1037920, at *1-3, n.3 (M.D.N.C. Dec. 17, 1998) (denying defendant's motion to stay because discovery was closed, dispositive motions were filed, and evidence showed that defendant was aware of the prior art cited in its reexamination request as early as May of 1998 with additional evidence suggesting that defendant was put on notice of the prior art in March of 1998, yet waited until August of 1998, *five months later*, to file its reexamination request) (attached hereto as Exhibit H); *Centillion*

*Data Sys., LLC v. Convergys Corp.*, No. 1:04-CV-0073-LJM-WTL, 2005 WL 2045786, at *1 (S.D. Ind. Aug. 24, 2005) (denying defendant's motion to stay because litigation has already been delayed for 18 months after defendant's questionable jurisdictional challenges) (attached hereto as Exhibit I); *Freeman v. Minn. Mining & Mfg. Co.*, 661 F. Supp. 886, 887-88 (D. Del. 1987) (denying stay because discovery had closed seven months ago, issues presented to the PTO were not technical, and defendant was aware of the prior art references cited in its reexamination request at least *eight months* prior to the request).

Thus, AB/Sciex has not sought nor will it gain any tactical advantage if the stay is granted. Thermo, on the other hand, placed the issue of the patentability of the claims of the '784 patent over prior art disclosed by AB/Sciex in discovery before the PTO apparently to exploit its procedural advantage in that forum. (Thermo suggests that it passed on the opportunity to submit a Patent Owner's Statement in response to the reexamination grant in order to expedite the reexamination. Thermo Br. 15. Thermo fails to mention that by doing so, it cut off AB/Sciex from filing a Reply to Thermo's positions. *See* 35 U.S.C. § 304.) AB/Sciex would have preferred to make its invalidity arguments solely before this Court, but Thermo chose to submit AB/Sciex's prior art and its discovery responses relating to invalidity to the PTO. Absent AB/Sciex's use of the limited opportunities available to it to address its arguments to the PTO directly, Thermo would have free rein to mischaracterize the prior art there.

## II.    Granting AB/Sciex's Motion To Stay Is The Most Efficient Course Of Action

The PTO's reexamination of the '784 patent claims will affect many facets of this litigation, none more so than the determination of the proper construction of the various

claim terms whose interpretations the parties dispute. If the Court grants AB/Sciex's motion to stay: (1) the Court will not need to revisit claim construction of the '784 patent to take into consideration the new intrinsic record being created at the PTO during reissue and reexamination proceedings; (2) if the '784 patent is declared invalid, the suit will in all likelihood be dismissed; (3) the record of the PTO's reexamination may encourage a settlement without further involvement of the Court; and (4) the cost for both the Court and the parties are likely to be reduced by having issues first considered by the PTO. *See Alloc, Inc. v. Unilin Décor N.V.*, No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at *7 (D. Del. July 11, 2003) (Exhibit C to AB/Sciex's Opening Brief); *Gioello Enters. Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340, at *1 (D. Del. Jan. 29, 2001) (Exhibit E to AB/Sciex's Opening Brief).

Absent a stay, the benefit of the Court's practice of having claim construction issues resolved at an early stage, and particularly before expert reports and dispositive motions are filed, will be lost. In addition, allowing the case to continue in parallel with the PTO reexamination proceedings would not only forego the above efficiencies, but would create a substantial risk of inconsistent rulings or the issue of an advisory opinion. *See Gioello*, 2001 WL 12540, at *1 ("Not staying the proceedings runs the risk of inconsistent adjudications or issuance of advisory opinions."). Only the Court, using its sound discretion, can avoid the likely duplication and needless expenditure of resources by staying the case. *Id.* at *2 ("Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict.").

-10-

Rather than confronting these facts, Thermo argues that there is little chance of realizing these efficiencies because there is only a 10% chance that the PTO will cancel all of the claims during the reexamination. However, that argument misses the point entirely. The real focus should be on fact is that 74% of all reexaminations result in either cancellation or amendment of the claims. *See* United States Patent and Trademark Office *Ex Parte* Reexamination Filing Data – September 30, 2005, at 2 (attached hereto as Exhibit J). Even if the patent claims are merely amended, as is often the case, all pending litigation issues will nevertheless be directly affected, and any efforts expended by the Court and the parties would be wasted. For example, the scope of the patent claims may change and the intrinsic record created during the additional proceedings before the PTO would need to considered for claim construction. Furthermore, an amendment could mean that the sole accused API 5000 product line may be removed from the case at the conclusion of the reexamination. *See Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997) (substantive change to claims in reexamination relieves those who may have infringed the original claims from liability for acts occurring prior to the conclusion of the reexamination); *see also* 35 U.S.C. §§ 252, 307.

Thermo also contends that the intended efficiencies gained by consolidating the case schedules for the 05-110 action and the 04-1230 action will be lost if the stay is granted because the "technologies at issue are the same," the "issues have a remarkable amount of overlap," and that "there also is a tremendous overlap in discovery." Thermo Br. 5. Thermo's exaggerates the overlap between the cases and the efficiencies lost if they are decoupled. With respect to discovery, for example, there will be little loss of

efficiency. Any discovery in the 04-1230 action that is relevant to the 05-110 action can be used in the latter action when the stay ends, assuming that there is anything left to the 05-110 action. There will be no need to redo discovery that is already done.

Further, Thermo confuses unrelated issues to create its argument regarding overlap in discovery. Thermo argues that the "inventors of the '784 patent are also the designers of the TSQ Quantum series," one of the accused products. Thermo Br. 5. However, in its initial disclosures, Thermo identified only one of three inventors, Alan Schoen, as being knowledgeable about the design of the TSQ Quantum series. *See* Exhibit B at 2. In Thermo's interrogatory responses, Thermo names only Clay Campbell, a non-inventor, as knowledgeable about the design and manufacture of the TSQ Quantum series, and does not even name Alan Schoen. *See* Excerpts from Defendant Thermo Electron Corporation's Second Supplemental Responses to Plaintiffs' First Set of Interrogatories (Nos. 1-15), Dec. 2, 2005, at 5, (attached hereto as Exhibit K). Moreover, the issues that concern the '784 patent (e.g., claim construction, validity, prior art, etc.) and the issues that concern the TSQ Quantum (structure and operation) are substantially distinct. Thermo is arguing, in essence, that one long deposition with potentially a significant amount of time and energy devoted to unnecessary discovery (and that may require a second deposition on issues subsequently raised by the PTO's proceedings) is more efficient than two shorter focused depositions where no time and energy would be wasted on unnecessary issues.

Thermo's argument that the most efficient course of action is to deny a stay where a reexamination would potentially invalidate only one of the patents at issue is also misplaced. In support of its argument, Thermo mischaracterizes both the procedural

posture and the rationale of *Agar Corp. v. Multi-Fluid, Inc.*, 983 F. Supp. 1126 (S.D. Tex. 1997). In *Agar*, the district court denied a motion to stay an *entire* case because: (1) the reexamination involved only one of four patents in suit, (2) the reexamination was on a patent where the PTO had already found the patent valid in a prior reexamination, and (3) the case had been pending for approximately one year and nine months and was in the later stages of litigation. In this case, however, the reexamination involves the only patent in suit, and far from being declared valid, the validity of the '784 patent is in serious doubt. Similarly, Thermo's reliance on *Soverain Software, LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d. 660 (E.D. Tex. 2005), for the proposition that a denial of a stay provides the best chance for maximizing efficiency and minimizing waste, is also misplaced. In *Soverain*, the defendant vigorously opposed the plaintiff's attempt to add additional patents to the litigation because it would delay progress toward trial. While arguing against the delay, the defendant requested reexamination of the plaintiff's three patents at issue. Then, when the case was more than a year old, *after* the district court had already held a *Markman* hearing, and with only six months left before trial, the defendant filed its motion to stay the case. Based on these facts, the court found that postponing a trial pending reexamination would unduly prejudice the plaintiff's ability to protect its property rights in the patents at issue. However, unlike *Soverain*, the facts in the present case weigh strongly in favor of a stay: no fact or expert depositions have been taken, the court has not yet held a *Markman* hearing, and trial is nearly a year away. More importantly, unlike the defendant in *Soverain*, the AB/Sciex has not made inconsistent arguments to the Court regarding scheduling the trial in the present case.

-13-

III.    **The Reexamination And AB/Sciex's Motion To Stay Are Consequences Of Substantial Questions Of Patentability Of The '784 Patent Claims As Determined By The PTO**

Considered in the general context of decisions to grant reexaminations, the importance of the PTO's decision to grant reexamination of the '784 patent stems not from the fact that 91% of the requests are granted, but from the fact that over 70% of reexaminations lead to cancelled or amended claims. *See* Exhibit J at 2; *see also Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 48 U.S.P.Q.2d (BNA) 1058, 1060 (C.D. Cal. 1998) ("The claims of the patent will likely be amended or narrowed during reexamination.") (citing *Output Tech. Corp. v. Dataproducts Corp.*, 22 U.S.P.Q.2d (BNA) 1072, 1074 (W.D. Wash. 1991) (noting that 77% of reexaminations lead to cancelled or amended claims).)

More importantly, when considered specifically, the PTO's decision granting reexamination of the '784 patent is *remarkably* thorough and detailed. Thermo attempts to minimize the significance of the PTO's decision to grant reexamination of the '784 patent by comparing it to the PTO's decision to grant reexamination of the '736 patent. *See* United States Patent and Trademark Office Reexamination Communication, Nov. 18, 1997, at 2-3, (attached hereto as Exhibit L); United States Patent and Trademark Office *Ex Parte* Reexamination Communication, Nov. 4, 2005, at 2-9 (Exhibit B to AB/Sciex's Opening Brief). However, a close look at each of the two PTO decisions only magnifies the significance of the PTO's decision to grant the reexamination of the '784 patent. The fact that the PTO issued a ten-page decision setting forth numerous grounds each separately raising substantial questions of patentability, and also the fact that the first question listed by the PTO was raised *sua sponte*, distinguishes the PTO's decision to

-14-

grant reexamination of the '784 patent from the norm.  Contrary to Thermo's arguments, the PTO went far beyond the norm when it raised *sua sponte* a substantial new question of patentability noting that the prior art suggested that the design of the mass spectrometer disclosed in the Whitehouse reference inherently takes into account the breaking of cluster ions created by an API source.  *See* Exhibit B to AB/Sciex's Opening Brief at 3-4.

Also, contrary to Thermo's assertion, AB/Sciex does not contend that the PTO's decision to grant reexamination of the '784 patent is the same as having already found all the '784 patent claims to be invalid.  Based on the PTO's detailed decision to grant reexamination of the '784 patent, it is very likely that the PTO will be reject the existing claims, and that Thermo will respond by having to either cancel, amend, and/or distinguish the claims from the prior art.  AB/Sciex's argues that the stay should be granted because otherwise the further prosecution history of the '784 patent would not be available to the Court or the parties for claim construction as currently scheduled.

## IV.    Granting AB/Sciex's Motion To Stay Does Not Unduly Prejudice Thermo

Granting AB/Sciex's motion to stay the present case will not unduly prejudice Thermo.  Thermo contends that any delay in its ability to stop AB/Sciex's infringement, "by definition" prejudices Thermo.  However, the relevant consideration is not whether Thermo may be prejudiced *at all*, but whether Thermo would be *unduly* prejudiced by the stay.  There is no evidence to support, nor does Thermo even argue, that Thermo would be unduly prejudiced by the stay.

First, Thermo has the tactical advantage in the proceedings before the PTO.  AB/Sciex has only a limited opportunity to participate in that forum.  *See* 37 C.F.R. §

-15-

1.291 (d) (Exhibit E at 162-63). Since, Thermo itself raised the issue of patentability of the '784 patent claims when it filed the reissue application for the '784 patent with the PTO, Thermo is in no position to complain about being relegated to that chosen forum until the proceedings are completed.

Second, Thermo has not sought a preliminary injunction, nor otherwise indicated that monetary damages would not provide full and complete relief in the unlikely event that the '784 patent survives the PTO's reissue/reexamination proceedings intact, and that Thermo prevails on the issues of infringement in this action. Thermo's reliance on the decision in *Remington* to show that Thermo would be unduly prejudiced by the stay, is misplaced. In *Remington*, the district court was persuaded by the plaintiff's argument that "a stay for reexamination could last for years . . . [and] [a]fter such a passage of time, [the plaintiff's] prayer for relief to enjoin [the defendant] from further infringement may no longer have value as technology or market conditions change." 1998 WL 1037920, at *2. However, in the present case, there is no evidence, and Thermo points to none, to supports the notion that Thermo would be *unduly prejudiced* by a stay. Further, unlike in the present case, in *Remington*, discovery had already closed, dispositive motions had been filed, the PTO had already denied a previous request to reexamine the patent at issue, and the court found that the defendant had unjustifiably delayed in filing the second request for reexamination.

Finally, Thermo's suggestion that AB/Sciex voluntarily stay the 04-1230 action and wait for the '784 patent to remerge from the PTO proceedings ignores the significant differences between the two cases. The '736 patent has already been found valid after reexamination by the PTO and a *district court litigation*, and is not presently being

-16-

reexamined by the PTO. The 04-1230 action is an independent, separate, and distinct patent infringement suit brought by AB/Sciex against Thermo for its infringement of the '736 patent. The issues raised by the ongoing proceedings at the PTO concerning the '784 patent do not impact the 04-1230 action, let alone raise the issue of unfair prejudice.

## CONCLUSION

For the foregoing reasons, the proceedings in this case should be stayed pending the outcome of the reexamination proceeding for U.S. Patent No. 6,528,784 already underway in the United States Patent and Trademark Office.

Respectfully submitted,

Dated: December 22, 2005          YOUNG CONAWAY STARGATT &
                                  TAYLOR, LLP


   /s/ Karen E. Keller
Josy W. Ingersoll (#1088)
Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600

*Attorneys for Defendants and Counter-Plaintiffs
Applera Corp., MDS, Inc., and Applied
Biosystems/MDS Sciex Instruments*

Of Counsel:

Walter E. Hanley, Jr.
James Galbraith
Lewis V. Popovski
Jeffrey S. Ginsberg
Mark A. Chapman
Huiya Wu
KENYON & KENYON
One Broadway
New York, NY 10004
(212) 425-7200

-18-

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire hereby certify that on December 22, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>   Frederick L. Cottrell, III, Esquire
>   Steve Fineman, Esquire
>   RICHARDS, LAYTON & FINGER
>   One Rodney Square
>   Wilmington, Delaware 19801

I further certify that on December 22, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

>   Wayne L. Stoner, Esquire
>   Wilmer Cutler Pickering Hale and Dorr LLP
>   60 State Street
>   Boston, MA 02109

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

Attorneys for Applera Corporation, MDS Inc., and
Applied Biosystems/MDS Sciex Instruments